IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TOMI L. H.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 20-1259-JWL |
| KILOLO KIJAKAZI,[2] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to Title II, sections 216(i) and 223, of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's allegations of symptoms, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for DIB on February 13, 2018. (R. 13, 150). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating her allegations of symptoms pursuant to Social Security Ruling (SSR) 16-3p.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

      The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R.

§ 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II. Discussion

Plaintiff claims the ALJ's reasons for discounting her allegations of symptoms—her treatment was routine and conservative, and her activities of daily living were inconsistent with her testimony—are not supported by the record evidence and are insufficient to justify discounting her allegations.  (Pl. Brief 8).  She argues the ALJ downplayed her treatment history and his findings conflict with the record.  Id. at 9-10.  She argues the opinions of Dr. Carter, Dr. LeClerc, and Dr. Stone support her allegations of disabling symptoms.  Id. at 12.  She argues, "the substantial record evidence did not support the ALJ's decision to find the opinions not persuasive."  Id. (citing Melanie

Lynne H v. Saul, No. 20-1028-JWL, 2020 WL 6262193, at *7-8 (D. Kan. Oct. 23, 2020) (where the ALJ applied the correct legal standard the issue is whether substantial evidence supports the decision); Monique M. v. Saul, No. 19-1345-JWL, 2020 WL 5819659, at *6 (D. Kan. Sept. 30, 2020) (same)).

In her Response Brief, the Commissioner argues the ALJ reasonably considered Plaintiff's allegation of symptoms. (Comm'r Br. 5). She points to record evidence which supports the ALJ's decision; id., at 6-12; and argues that although Plaintiff cites other evidence which might support a different decision, the question for the court is whether the ALJ's decision is supported by substantial evidence, not whether Plaintiff can cite substantial evidence in support of her position. Id. at 7. The Commissioner points out that the ALJ did not deny benefits for failure to follow prescribed treatment, but discounted Plaintiff's allegations because her attempts to relieve her symptoms did not include following her treating sources' advice to stop smoking. Id. at 9 (citing Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988)). The Commissioner argues Plaintiff's suggestion her treatment was not conservative "is belied by … her own statement that she preferred to maintain such 'conservative therapy.'" Id. at 10 (citing R. 600). Finally, the Commissioner points out the ALJ found the opinions of Dr. Carter, Dr. LeClerc, and Dr. Stone unpersuasive. Id. at 15-16.

A.   **The ALJ's Findings Regarding Plaintiff's Allegations of Symptoms**

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 20). He

explained the inconsistencies he found in the record evidence.  He found the objective medical findings do not support Plaintiff's "allegations of disabling symptoms and limitations."  (R. 22).  He found Plaintiff's "activities of daily living are consistent with the above residual functional capacity and inconsistent with her alleged limitations and allegation of disability."  Id.  He found her "treatment has been routine and conservative," "she has not been entirely compliant with recommended treatment and medication," and "the record documents improvement in her symptoms with treatment and medication compliance."  Id. at 23.

### B.     Standard for Evaluating Allegations of Symptoms

The court's review of an ALJ's evaluation of a claimant's allegation of symptoms[3] is deferential.  An ALJ's evaluation is generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  Such evaluations "are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's evaluation of

---

[3] Talley, Broadbent, Wilson, Hackett, Glass, Thompson, Huston, Luna, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination is consistent with the approach for evaluating allegations of symptoms set forth in SSR 16-3p.  Brownrigg v. Berryhill, 688 Fed. Appx. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on December 27, 2019, when this case was decided.

6

a claimant's allegations, the court will usually defer to the ALJ on such matters. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to [a claimant's allegations] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston, 838 F.2d at 1133); Hackett, 395 F.3d at 1173 (same).

The framework for a proper analysis is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of symptoms; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson, 987 F.2d at 1488 (explaining the Luna framework).  The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegation of symptoms:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These factors include:

>the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

### C.   Analysis

To the extent Plaintiff argues the ALJ's reasons to discount her allegations—that her treatment was routine and conservative, and her activities of daily living were inconsistent with her testimony—are insufficient to justify discounting her allegations, that argument ignores the other reasons given to discount her allegations of symptoms—the objective medical findings do not support Plaintiff's allegations, she has not been entirely compliant with treatment recommendations, and her symptoms improved with treatment and medication.  Even assuming these two reasons by themselves were insufficient to justify discounting Plaintiff's allegations of disabling symptoms, taken together all the ALJ's reasons, if supported by substantial evidence, are a sufficient basis to discount Plaintiff's allegations.  Thus, the real question is whether substantial evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401) supports the ALJ's findings.

The evidence cited by Plaintiff to suggest the ALJ downplayed her treatment history was all considered, and largely cited, by the ALJ in his decision.  While some of the evidence might be interpreted to support Plaintiff's allegations, it also supports the

ALJ's decision. The ALJ cited the inconsistencies he relied upon, and the record supports his finding. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). Plaintiff has not shown that the evidence compels a different finding.

Plaintiff's argument the ALJ erred in discounting her allegations because he failed to consider if smoking cessation would restore her ability to work misses the point of the ALJ's decision and misunderstands the regulations regarding failure to follow recommended treatment. The ALJ discounted Plaintiff's allegations of disabling symptoms in part because she was not "entirely compliant with recommended treatment" despite that "multiple medical professionals have recommended she stop smoking." (R. 23). He noted that Plaintiff "testified she continues to smoke ¾ pack to one pack per day." Id. As Plaintiff suggests, in 1987 the Tenth Circuit stated what has become known as "the Frey test:" that, "In reviewing the impact of a claimant's failure to undertake treatment, ... [the court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed;

9

(3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). As the Commissioner suggests, in 2000, the Tenth Circuit visited a similar issue in which the ALJ discounted the plaintiff's allegations, in part, because of a failure to take pain medication for allegedly severe pain. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The plaintiff argued this finding was error because "he took pills his friends gave him," although he did not know what he was taking and did not indicate the frequency with which this occurred, and he argued that the Frey test should have been applied. Id. The court found the Frey test inapposite "because Frey concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment." Id. The court explained its finding:

> The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain--including whether he took pain medication--in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling.

Id. Thus, the Tenth Circuit has recognized two scenarios, a failure to undertake treatment, wherein the Frey test must be applied, and a failure to pursue treatment to relieve symptoms wherein the Frey test need not be applied.

Here, the Commissioner argues the ALJ's rationale is based on the extensiveness of attempts to obtain relief from her symptoms and suggests the holding in Qualls applies. Were this all the law that applies in this case, the court would still be inclined to agree with the Commissioner and apply Qualls. However, in 2018 the Commissioner issued SSR 18-3p providing guidance about how the SSA applies its failure to follow

10

prescribed treatment policy in 20 C.F.R. §§ 404.1530 and 416.930.  The Ruling explains that the SSA

> will determine whether an individual has failed to follow prescribed treatment only if all three of the following conditions exist:
>
> 1. The individual would otherwise be entitled to benefits based on disability or eligible for blindness benefits under titles II or XVI of the Act;
>
> 2. We have evidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based; and
>
> 3. We have evidence that the individual did not follow the prescribed treatment.

SSR 18-3P, 2018 WL 4945641, *2-3 (SSA Oct. 2, 2018)

Here, the first condition has not been met.  Apart from the recommendation to stop smoking Plaintiff would still not be eligible for disability.  Applying SSR 18-3p it becomes clear the ALJ relied on Plaintiff's failure to quit (or even to significantly reduce) her smoking in order to show that she had not made this significant attempt to reduce her peripheral artery disease, asthma, and COPD symptoms, thereby suggesting that her symptoms were not as severe as she alleged.  That is not error.

Neither has Plaintiff shown error in the ALJ's use of her activities of daily living to discount her allegations of symptoms.  Although as Plaintiff suggests her activities of daily living do not prove that she can engage in competitive work activity on a consistent basis, they are nevertheless inconsistent with her allegations of disabling limitations.  The ALJ appropriately explained it thus:

> According to her functional report, she provides for her own personal care, takes care of her mother, runs errands, drives, shops, watches television, bowls twice a week, cleans, does the laundry, irons, washes dishes, takes

> out the trash, sweeps, goes fishing, plays cards and board games twice a week, and manages her own finances (Exhibit B6E). Similarly, during the hearing, she testified she takes care of her mother, shops, drives, bowls twice a week, fishes, reads, does jigsaw puzzles, cooks, takes care of her pet cat, cleans, and does the laundry. The claimant's wide range of daily activities leads the undersigned to find the claimant's allegedly disabling impairments are not as significant as alleged.

(R. 22). Therefore, it is not error to rely on such activities to discount Plaintiff's allegations of disabling symptoms.

Plaintiff argues that her allegations are supported by the opinions of Dr. Carter, Dr. LeClerc, and Dr. Stone and that the ALJ erred in finding those opinions not persuasive because "the substantial record evidence did not support" that decision. (Pl. Br. 12). The problem with Plaintiff's argument is that there is no such thing as "the substantial record evidence." As noted supra at 2, "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401. Moreover, there may be substantial evidence supporting more than a single conclusion. The Tenth Circuit has addressed that possibility as noted supra at 9. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo, 383 U.S. at 620. The ALJ explained his reasons for finding the physicians' opinions not persuasive and those reasons are supported by record evidence. Plaintiff has not shown evidence compelling her view.

Plaintiff's remaining arguments are merely a suggestion that the court should weigh the evidence differently than did the ALJ and substitute its judgment for that of the Commissioner. It is specifically prohibited from doing so. <u>Bowman</u>, 511 F.3d at 1272; <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated November 5, 2021, at Kansas City, Kansas.

                                              s:/*John W. Lungstrum*
                                              **John W. Lungstrum**
                                              **United States District Judge**